GEORGE T. BROWN et al., Appellants, *v.* FRANCIS HOGG, Appellee.

### APPEAL FROM MADISON.

The State Bank of Illinois had the right under its charter to purchase a judgment which was a prior lien on lands mortgaged to it, in order to secure the payment of existing debts, if the object was to protect itself and secure the payment of its own claim. And in such a case it might purchase the lands of the debtor on an execution founded on such judgment.

THIS cause was heard by UNDERWOOD, Judge, at the March term, 1852, of the Madison Circuit Court.

W. MARTIN and S. T. SAWYER, for appellants.

D. J. & H. S. BAKER, for appellee.

TREAT, C. J.   At the April term, 1838, of the Alton municipal court, William Russell recovered a judgment against Beall Howard and John Bostwick, for $4,045.

In January, 1839, Howard executed a mortgage to the State Bank of Illinois, to secure the payment of a promissory note, for $11,325.86.   The mortgage embraced a part of block one in Howard's addition to Alton, the same being fifty feet in width, and one hundred and seventy-seven feet in length.   It also included four other lots in Alton.

In August, 1839, Howard executed a mortgage to Francis Hogg, to secure the payment of a promissory note, for $1,242. This mortgage embraced a piece of ground in Alton, one hundred feet in length, and fifty feet in width.   About half of the same was in block one, in Howard's addition, and covered by the mortgage to the bank.

In April, 1841, Russell assigned the judgment to the bank, for the consideration of $4,773, the amount then due thereon. Russell was then proceeding with an execution to sell the property mortgaged to the bank ; and the bank purchased the judgment, under the advice of counsel, to prevent a sacrifice of the property, and to secure the payment of its debt from How-

ard. The bank sued out an execution on the judgment, on which $520 was collected in April, 1842. On a second execution, the bank, in June, 1842, purchased in real estate to the amount of $3,300. That portion of block one described in the mortgage to the bank, was included in this sale, for which the bank paid $300. On another execution, the bank bought the premises embraced by Hogg's mortgage for $400. It also bought in another lot for $300. The sheriff made return on the execu-. tion, that he could find no other property from which to satisfy the balance due on the judgment. Two of the lots included in the mortgage to the bank, were not sold under the judgment. The property sold was not redeemed, and the sheriff conveyed it to the bank.

In September, 1842, the bank obtained a decree against Howard for the foreclosure of its mortgage, but no proceedings were ever had under the decree.

In June, 1850, Hogg filed a bill to foreclose his mortgage. He made the trustees of the bank, and persons claiming title to the mortgaged premises from them, parties to the suit. He alleged that the bank had no authority to purchase the premises, and prayed that the sale might be set aside. The defendants insisted that the sale was valid, and that a perfect title passed by the proceedings upon the judgment. On the hearing of the cause, the court made a decree setting aside the sale of the premises embraced by the complainant's mortgage, and directing a sale of the same to pay the amount due to the complainant. The defendants prosecuted an appeal.

The bank had a clear right to purchase Russell's judgment. It was a prior lien on the property of Howard, and Russell was proceeding to enforce satisfaction by the sale of the premises mortgaged to the bank. The sale might absorb the whole of the property embraced by the mortgage. It was therefore necessary for the bank to obtain the control of the judgment, in order to prevent a sacrifice of its own security. There was nothing in its charter to forbid the purchase of a judgment under such circumstances. By virtue of the assignment, it became the equitable owner of the judgment, and entitled to use all proper remedies to coerce payment. It succeeded to the rights of the judgment creditor; and the lien of the judgment was in no respect affected by the transfer. The bank had the right to reimburse itself the money advanced to Russell, by the sale of any property upon which the judgment operated as a lien. A purchaser at a sale under the judgment, would acquire a perfect title as against the mortgagees of Howard. And it was competent for the bank to become a purchaser,

Brown et al. *v.* Hogg.

unless it was prohibited by its charter from so doing. The capacity of the bank to purchase the property in question, is denied by the complainant, and the fifth section of the charter is relied on to sustain this position. That section reads thus : " The real estate which it shall be lawful for said bank to purchase, hold, and convey, shall be, — 1st. Such as shall be required for its immediate accommodation in the transaction of its business, or such as shall have been mortgaged to it in good faith by way of security for loans previously contracted, or for moneys due; or 3d. Such as shall have been conveyed to it in satisfaction of debts previously contracted in the course of its dealings; or 4th. Such as shall have been purchased at sales upon judgments, decrees, or mortgages, obtained or made for such debts ; and said bank shall not purchase, hold, or convey real estate in any other case, or for any other purpose; and all such real estate, not absolutely necessary for the convenient discharge of its business, shall be set up at least once a year at public sale, and if the sum offered therefor shall be sufficient to reimburse the principal and interest of the debt for which it was taken by said corporation, it shall be absolutely sold." The object of these restrictive provisions was to prevent the bank from becoming a large holder of real estate. It was to prevent it from diverting its funds from their appropriate channels, and investing them in lands. It was the intention of the legislature, that it should confine its operations to legitimate banking, and not become a speculator in real estate. But it was equally the intention, to permit the bank to acquire real estate when necessary to prevent a loss upon its debts. It was not the design, that it should remain passive when the property of its debtors was being sacrificed, and their ability to pay thereby materially impaired. On the contrary, it was the intention to give it the power to protect itself against loss in such cases, either by a purchase of property directly from its debtors, or at sales on judgments or decrees against them. It is expressly authorized to acquire real estate in satisfaction of existing debts. If it can do this by an arrangement with its debtor, we see no reason why it may not accomplish the same result by a purchase on a judgment or decree in favor of a third person. There is no difference in principle between the two cases. Such a purchase may not fall within the letter of any of the clauses permitting it to acquire and hold real estate, but it is clearly within the reason and equity of them.

In this case, the bank purchased the judgment for the *bonâ fide* purpose of securing the payment of its own debt, and not in the way of speculation. It obtained the control of the judg-

19*

ment for the purpose of enforcing satisfaction thereof out of the other property of the debtor, and thus relieving the premises included in its mortgage from any prior incumbrance. The proceedings on the judgment were conducted with the view of producing that result. The bank purchased in the property in good faith, and for the sole purpose of securing its own debt. It was advised by counsel, that such a course was necessary to protect itself against loss. And although no portion of its debt was extinguished by the sales on execution, that circumstance does not affect the merits of the transaction. The value of the property bound by the judgment did not equal its expectations, and it therefore may not have realized as much advantage from the purchase of the judgment, as circumstances at the time indicated. But the mere fact that no part of its debt was satisfied by the sales upon the judgment, ought not to deprive it of the benefit of the property purchased. It was a *bonâ fide* attempt on the part of the bank to secure the payment of its debt, and although it may have failed to accomplish that object, it would not be compelled to lose the amount paid for the judgment. If it had procured satisfaction of its debt in whole or in part by the proceedings under the judgment, there would be no reasonable doubt of its right to hold the property purchased. But it may have in fact secured the ultimate payment of a portion of the debt; and that, for all the purposes of this case, may well be considered as equivalent to a satisfaction to that extent. Two of the lots covered by its mortgage were not sold on execution; and they may have much exceeded in value the balance due on the judgment. The bank may therefore have really secured the payment of some part of its debt, by the purchase of the judgment and of the real estate under it. That would clearly bring the case within the equity of the charter, and authorize it to acquire the title to the property. If a third person had become the purchaser instead of the bank, there would not be a question of his right to hold the property as against the complainant. The latter has no substantial title to relief in a court of equity. His bill is based upon the technical objection, that the bank had not the capacity to hold real estate, purchased by it in good faith, for the purpose of protecting itself against a prior incumbrance.

It is the opinion of the court, that the bank had authority to purchase under the judgment, and thus it acquired the title to the premises in question, discharged of the lien of the complainant's mortgage. He might have obtained judgment against Howard, and redeemed from the sale. But omitting to pursue that course, his lien was diverted by the proceedings

on the judgment. This conclusion is not in conflict with the cases of the Bank of Michigan *v.* Niles, 1 Doug. 401, and the Chatauque County Bank *v.* Risley, 4 Denio, 480, so much relied on at the argument. It was held in the former case that the bank, with a similar restriction in its charter, had no power to purchase real estate for the purpose of selling it again ; and that a contract entered into for that purpose was unlawful, and a court of equity would not aid either party to enforce it. The court held in the other case, that the bank, with the same provision in its charter, had no capacity, after the time for redemption had expired, to purchase the interest of a judgment creditor, who, by virtue of his own judgment, had acquired the title of the purchaser of land sold on execution, although the bank had unsatisfied judgments against the debtor, whose land had been sold. In both of those cases, the purchases were made for purposes of speculation; and not in satisfaction of debts due to the banks, or to secure the payment of such debts.

The decree of the circuit court must be reversed, and the bill dismissed.

*Decree reversed.*