## ZANTZINGERS *v.* GUNTON.

1. Although a bank by statute, or the trustees, on the expiration thereof, who liquidate its affairs, may be deprived of power to take or hold real estate, this does not prevent either's making an arrangement through the medium of a trustee, by which, without ever having a legal title,

control, or ownership of such estate, they yet secure a debt for which they had a lien on such estate, and have the estate sold so as to pay the debt.

2. A bill against a trustee for an account dismissed on a case stated.

APPEAL from the Supreme Court of the District of Columbia; the case as assumed by this court on the evidence being thus:

In the year 1844, the charter of the Bank of Washington, in the city of that name, being about to expire, and its affairs to pass into the hands of William Gunton, its late president, and certain other persons as trustees, to wind them up to the best advantage, and the bank having a debt of some amount due to it from Daniel Carroll, for which it had a lien on several lots in Washington already previously incumbered, Gunton, in behalf of the bank, requested a certain William Fisher there, with whom he was on terms of much intimacy, to become the purchaser, as agent of the bank, of the lots; Gunton promising to save him from any loss. Fisher consented to become the purchaser in the way mentioned. The bank accordingly furnished the requisite funds, about $6065.84, to Fisher, who gave his note therefor, and he bought the lots, a conveyance of them being made to him. Subsequently to this, the charter of the bank having now expired, Fisher and wife made a conveyance of them by deed to Gunton. This conveyance was declared to be in trust to secure the payment of the note of William Fisher for $6065.84 at sixty days, payable to his own order; and it authorized a sale of the property for that purpose, and directed the trustee to pay the balance, if there should be any, as the grantor might by further instrument in writing direct. Fisher afterwards did by a formal instrument, under seal, direct that after the sale of all the lots, and the payment of the note and interest and the costs of the trusts, including compensation to the trustee, any remainder should be paid to the trustees of the bank.

In this state of things, certain persons of the name of Zantzinger, related to Fisher, and who had become through

the dispositions of his will owners of all real estate which he left at his death, filed a bill against Gunton setting forth that Fisher had given a note for $6065.84 to the bank, and had conveyed these lots to Gunton, the president of its trustees, to secure it; that Gunton had never settled any account, and that they had no knowledge whether the note had been paid or what disposition had been made of the lots conveyed as security; and praying an account, &c.

The bill made no kind of reference to the instrument of appointment abovementioned as having been executed by Fisher, by which he directed that after the sale of the lots and payment of the note, &c., any remainder should be paid to the trustees of the bank.

The answer set up as defence the history of the matter as above given, and especially that Fisher had by formal instrument of appointment, produced, directed that any surplus left after paying his note should be paid to the trustees.

Proof was taken, including testimony of Gunton himself, which if believed established, of itself, the defence. The court below dismissed the bill, and from that, its action, the complainants took this appeal.

*Messrs. F. Miller, R. T. Merrick, and T. J. Durant, for the appellant,* referred to certain acts of Congress,[*] arguing from them that the bank had no power to hold real estate except for certain specified purposes, for which they did not hold these lots, and that the trustees had no power to take and hold it at all.

*Messrs. J. D. McPherson and W. D. Davidge, contra,* were relieved by the court.

Mr. Justice MILLER delivered the opinion of the court.

The complainants in their bill, omitting any statement of the formal instrument of appointment made by Fisher, and treating the deed of trust as a mere security for his note,

---

[*] 2 Stat. at Large, 625; 3 Id. 618; 5 Id. 451.

allege that there is a balance in the hands of the trustee, Gunton, to which they are entitled, and call upon him for an account.

The answer of the defendant, which is fully sustained by the proof, sets up two defences, either of which is in our opinion sufficient:

1. It sets up and relies upon the instrument which appointed and directed that he should pay any balance remaining of the proceeds of the sale of the lots, after satisfying the note, to the trustees of the Bank of Washington.

As these instruments are all under seal and by the common law imply on their face a good consideration, they show that the grantor had parted with all his interest in the property. The legal title was in the trustee, and the equitable interest in the trustees of the bank. His direction to the trustee to sell, and his subsequent direction to pay the proceeds to these trustees, carried all the interest he ever held. Of course, no interest in these lots or in the proceeds of their sale passed either by his will or by inheritance to the complainants.

2. But the answer and the evidence further show very fully that William Fisher only held the legal title as naked trustee without interest, for the use of the trustees of the Bank of Washington. About the period of the expiration of the charter of that institution, it became necessary, in order to secure payment of a debt due to it from Daniel Carroll, to have the lots in question, on which they had a lien, placed in a situation where the money could be realized. The lots were accordingly purchased by Fisher, at the request of the trustees of the bank, who furnished the money, and the note and trust deed to Gunton (who was one of the trustees of the bank) were devices by which the lots were divested of other liens and placed in the hands of Gunton, so that on sales to be made, at convenient times and fair prices, the proceeds in the shape of money could be paid to the trustees who had the management of the bank. Fisher never paid any money, nor was it intended that he should. His note was placed in the bank, and was by it protected and

cancelled in due time. It was on his part a mere act of friendship to accept the trust and confidence reposed in him by the trustees of the bank, and he carried out faithfully the requirements of that trust. The efforts of the present complainants to take advantage of this confidence, and to assert an interest which he never thought of claiming, do not commend themselves to a court of equity, and the technical rules of the law on which they are based should be very clearly in their favor to enable them to succeed. We are of opinion they have no place here.

It is said that neither the bank, whose charter had expired, nor the trustees who were authorized to wind up its affairs, could purchase or hold real estate.

As a general proposition this may be true. And if the transaction here was in its effect to vest in the bank the real estate in question, either by its legal title or the absolute equitable ownership and control of it, the question presented and argued by counsel would arise if complainants were in position to raise it. But it is very clear that no such effect can be given to the transaction we are considering. The bank had a debt due to it and a lien on this property. The right of the bank, or its liquidating trustees, to have this property so sold as to pay this debt is undoubted. If in doing this they were compelled, for their own protection, to buy off other incumbrances, so that when sold and converted into money all of it should be paid to them, no principle of law or justice was violated. Neither the bank nor the trustees of the bank ever had the legal title, or the power of sale, or the right to control the time or the terms of the sale. If Gunton, the trustee, had failed or refused to sell, or died without a sale, no power lay in the trustees of the bank to make a sale or to receive the title. Their only remedy would have been to assert their right to a sale and to the proceeds of it in a court of chancery.

It cannot be said, then, that the trustees of the bank ever had the legal title, the control, or the ownership of the land, and their only interest was a right to the proceeds when the lots should be sold under the deed of trust. This was not

in our opinion forbidden by any law of the District, statutory or otherwise. Nor do we think it worth any consideration that Fisher's note was given in the transaction. He incurred no risk; he acquired no real interest in the property and claimed none; and if he ever had a technical legal interest he parted with it when he gave the deed of trust and the subsequent authority to pay the proceeds of the sale to the trustees of the bank.

DECREE AFFIRMED.