### W. J. STEVENS CO. v. NOVICE STATE BANK. (No. 7084.)

Court of Civil Appeals of Texas. Austin.
April 20, 1927.

Rehearing Denied May 11, 1927.

1. Banks and banking ⬤⟹94—State bank may acquire ownership of property as an incident to authorized transactions or in settlement of indebtedness due it (Rev. St. 1925, art. 392).

Under Rev. St. 1925, art. 392, defining powers of state banking corporation, although bank cannot directly or indirectly employ its money in purchase and sale of cotton, it may acquire ownership of cotton or other property as an incident to authorized transactions or in settlement of an indebtedness due it or to prevent loss, or it may acquire possession of property as security for a loan or indebtedness.

2. Appeal and error ⬤⟹999(1)—Where judgment was based upon undisputed evidence and jury's finding, issue was conclusive against plaintiffs on appeal.

Where judgment was based upon undisputed evidence as well as upon jury's finding upon issue, issue was conclusive against plaintiffs on appeal.

3. Banks and banking ⬤⟹90 — Where bank merely acts as agent for owners in selling cotton, bank is not personally liable for contracts.

Where bank merely acted as agent for owners of cotton in selling cotton to plaintiffs, bank was not personally liable for contracts sued upon.

4. Banks and banking ⬤⟹90—That bank cashier sells cotton is not sufficient to charge bank with holding itself out as being owner or as having right to sell cotton (Rev. St. 1925, art. 392).

That cashier of bank sells cotton is not of itself sufficient to charge bank with holding it-

self out through cashier as being either owner of cotton or as having lawful right or authority to sell same and no presumption arises in favor of purchaser because he is charged by law with notice that there is a prohibition, under Rev. St. 1925, art. 392, against bank dealing in cotton.

**5. Banks and banking ⊜⟞90—Bank was not estopped to claim that it neither owned nor had authority to sell cotton and bind itself primarily on contract, where cashier had sold cotton for solvent owners (Rev. St. 1925, art. 392).**

In suit against bank for money due purchaser of cotton under contract after reclassification and reweighing of cotton, bank was not estopped, under undisputed evidence, to set up defense that it neither owned nor had legal right and authority, under Rev. St. 1925, art. 392, to sell cotton and bind itself primarily on contract, where cashier had sold cotton for owners and bank received no benefits, and there was no showing that owners were not solvent.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Suit by the W. J. Stevens Company against the Novice State Bank. From a judgment for defendant, plaintiffs appeal. Affirmed.

Dibrell & Snodgrass, of Coleman, for appellants.

Critz & Woodward, of Coleman, for appellee.

BLAIR, J. Appellants sued appellee bank, alleging, that they purchased certain cotton from it, which was delivered and paid for on shipper's order bills of lading with drafts attached, but under an agreement that final settlement would be made upon the outturns of the cotton at Coleman as to grades and weights, using middling as a basis; and that a reclassification and a reweighing of the cotton showed appellee owed them $1,833.23 by virtue of the agreement. Appellee answered that it did not own or sell the cotton or make any agreement in reference to it; and, further, that, if it should be held it did own or sell the cotton, guaranteeing grades, weights, etc., such acts, as well as the alleged acts of its cashier, H. D. Ayers, in making the sales to appellants, were ultra vires and void, because it was a state banking corporation, without power or authority to deal in cotton. By a supplemental petition, appellants pleaded that appellee was estopped to assert that the contracts of sale or the acts of its cashier in making them were ultra vires, because it held itself out as the owner of the cotton and as having the right to sell same, and held its cashier out as having the authority to make the sales, and that it received the benefits thereof to appellants' prejudice. Appellee replied that the cotton belonged to J. M. Summers and H. T. Day, that its cashier, H. D. Ayers, represented said owners at their instance and request in the sale of the cotton, and that it was therefore not responsible for the transaction in any respect. Summers and Day were made parties defendant originally, but for some reason not disclosed by the record appellants dismissed as to them. The case was submitted on special issues, some of which the jury were unable to answer; but the trial court concluded that all material issues had been answered, and, over objection of appellants, received the verdict, discharged the jury, and, on motion of appellee, rendered judgment for it, which recites that it is based upon "the findings of the jury and of the court." The appeal is from this judgment, and, since appellants contend that the jury's verdict is incomplete and not determinative of all the issues of fact involved in the case, or that they should have had judgment upon certain of the jury's findings, we set out the following of the issues submitted and the jury's answers to such of them as they agreed upon:

"(1) Did the defendant, Novice State Bank, own the cotton purchased by J. E. Stevens Company? Answer: No.

"(2) Was H. D. Ayers representing the defendant, Novice State Bank, in the sale of the cotton to J. E. Stevens Company? Answer: No.

"(3) Did the cotton sold to J. E. Stevens Company come into possession of the defendant, Novice State Bank, as security for loans? Answer: No.

"(4) Did the Novice State Bank, acting by and through H. D. Ayers, its cashier, hold itself out to the plaintiffs, J. E. Stevens Company, as the owner of the cotton in controversy until after the said J. E. Stevens Company had purchased and paid for said cotton? Answer: No.

"(5) Was it agreed between plaintiffs, J. E. Stevens Company, and H. D. Ayers, cashier of the Novice State Bank, at the times the cotton in controversy was sold to J. E. Stevens Company, that final settlement should be made on outturns of the cotton at Coleman, Tex.? Answer: Yes.

"(6) Did the Novice State Bank, acting by and through its cashier, H. D. Ayers, hold itself out to the plaintiffs, J. E. Stevens Company, as having the legal right and authority to sell said cotton? Answer: ———."

"Special issue No. 1 requested by the plaintiffs: Were the cotton tickets representing the cotton in question in this suit, at the times the said cotton was bought by the said J. E. Stevens Company in the possession of the Novice State Bank and held by said bank for the purpose of securing any indebtedness owing to the said bank? Answer: Yes."

The appeal is predicated upon twenty-seven propositions of law, neither of which is sustained. They raise the following questions which are determinative of the case:

(1) That the unanswered issues submitted were material to the final disposition of the case, and therefore the jury's findings on issues favorable to appellee should have been set aside and a new trial granted.

(2) That appellants were entitled to judgment under the undisputed evidence as well as upon certain of the jury's findings.

[1] Article 392, R. S. 1925 (396 R. S. 1911), defines the powers of a state banking corporation, and by necessary implication prohibits such a bank from directly or indirectly employing its money in the purchase and sale of cotton. It seems well settled, however, that, while a state bank may not directly or indirectly engage in the business of purchase and sale of cotton or of any other merchandise, it may acquire ownership of cotton or other property as an incident to authorized transactions or in settlement of an indebtedness due it or to prevent loss, or it may acquire possession of property as security for a loan or indebtedness, and, when ownership or possession, coupled with authority to sell or convey in satisfaction of a loan or indebtedness, is thus acquired, it may sell and convey the property, and its acts in so doing are not ultra vires of its powers. 7 C. J. 588 and 591–592, §§ 221–223 and 229.

Now, in view of this law, appellants alleged and sought to show that the sales of the cotton in controversy made to them by appellee bank's cashier, guaranteeing grades and weights at Coleman, were in fact the bank's contract, and that it was within its power to make them upon the following grounds: First, appellee bank was the actual owner of the cotton and therefore authorized to sell it under the terms of the contract alleged; or, second, that, if it did not own the cotton, it had possession and the lawful right and authority to sell same in satisfaction of a mortgage or security lien thereon; and, third, that, if it neither owned nor had the legal right and authority to sell the cotton and bind itself primarily on the contract alleged because same would be ultra vires of its powers, it was estopped by conduct to set up such defense, for the reason that it had held itself out as owner or as having lawful right and authority to sell it under the terms alleged.

[2] In reference to the first ground of recovery, or that appellee bank owned the cotton, the jury found in answer to issue 1 that it did not own the cotton, and the finding is supported by the undisputed evidence, and the issue need not have been submitted. Since the judgment is based upon the undisputed evidence as well as upon the jury's finding, the issue is conclusive against appellants as to their first ground of recovery.

[3] In reference to the second ground of recovery, or that appellee bank had possession of the cotton with lawful right and authority to sell it in satisfaction of an indebtedness secured by a lien on·it, the jury found in answer to issue 3 that appellee bank did not come into possession of the cotton as "security for loans," and the jury's finding is supported by the undisputed evidence. Since the judgment is based upon the jury's finding and the undisputed evidence it is conclusive against appellants as to their second ground of recovery. However, it is true that the jury found in this connection, in answer to "special issue No. 1 requested by plaintiffs," that, at the time appellants purchased the cotton, the "cotton tickets" representing same were held by appellee bank "for the purpose of securing" an indebtedness due it, and it is upon this finding that appellants base their claim for a judgment. The issue was immaterial, and is based upon an uncontroverted fact. Appellee admitted that it held the ticket for the purpose found by the jury; but the undisputed evidence is that the cotton was not sold by appellee as holder of the collateral tickets, or by virtue of them, nor that it had the right and power to sell it by reason of being holder of the tickets, nor that it even had possession of the cotton for that purpose. As stated, the evidence on these two findings of the jury, with reference to the character of lien appellee had on the cotton, is undisputed, and shows that it merely held the cotton tickets as collateral security for loans of money to the owners with which the cotton was bought; that, at the request of the owners, appellee's cashier sold the cotton for them to appellants; that it was delivered on shipper's order bills of lading in appellee bank's name and paid for on drafts attached which were payable to appellee bank; that statements and returns of the sales were made to appellee bank, and the money received was deposited to the credit of the owners of the cotton as distinguished from being applied in payment of their loans. This evidence simply shows that the cashier of appellee bank, or the bank itself, merely acted as agent for the owners of the cotton, and the bank is not personally liable for the contracts sued upon, and any attempt on its part to bind itself under the facts stated would be ultra vires of its powers. Griffin v. Wabash R. Co., 115 Mo. App. 549, 91 S. W. 1015.

This brings us to a discussion of appellants' third or remaining ground of recovery, or that appellee was estopped to set up the defense of ultra vires and estopped to assert that it did not own the cotton or have lawful right and authority to sell it, because it had represented that it did not own it or have that right, and because it had received the benefits of the sales of the cotton.

Estoppel by conduct is defined in 21 C. J. 1060, § 2, as follows:

"If a person by his conduct induces another to believe in the existence of a particular state of facts, and the other acts thereon to his prejudice, the former is estopped, as against the latter, to deny that that state of facts does in truth exist."

This same authority, at page 1207, § 208, defines estoppel by acceptance of benefits in the following language:

"In order to create an estoppel by the acceptance of benefits, it is essential that the party against whom the estoppel is claimed should

have acted with knowledge of his rights; also that the party claiming the estoppel was without knowledge or means of knowledge of the facts on which he bases his claim of estoppel, that he was influenced by and relied on the conduct of the person sought to be estopped, and that he changed his position in reliance thereon to his injury."

See Burnett v. Atteberry, 105 Tex. 119, 145 S. W. 582, and Nicholson v. Lieber (Tex. Civ. App.) 153 S. W. 641, both quoting the above or similar definitions from Cyc.

The cashier of appellee bank, who made all the sales to appellants in 1919, had died before the trial of the case in 1926. Appellants are a copartnership engaged in the cotton business. All of the purchases in controversy were made by W. J. Stevens, a member of the copartnership, by telephone, who testified to the conclusion on his part that he thought he was buying the cotton from appellee, but as to the following facts:

"I know H. D. Ayers. He is dead. He was living in 1919; he was cashier of the Novice State Bank, the defendant, at that time, and he was the active manager of that bank at that time. * * * Going back—I did have a conversation with Mr. H. D. Ayers with reference to the purchase of cotton prior to the time we received and paid those drafts. I told him we would buy the cotton with the Coleman outturn and weights and class; that is the way we bought it."

"Sometimes Mr. Ayers would call up and say he had so many bales to sell, and sometimes, maybe, we would call him and tell him we wanted to buy the cotton. They would state who had the cotton—he always said 'we' or 'I,' I believe is about the way he represented it all the time. He just said, 'I have got' so many bales of cotton to sell, and we would buy it, or I would call up and ask him if he had any cotton, and we would agree on the price, and that is the way it was handled."

"I testified yesterday that Mr. Ayers would call me up and I would call him up on the telephone. I never inquired who owned this cotton —it was sold by the Novice State Bank, but I didn't ask him that. He didn't tell me that the Novice State Bank owned the cotton. As a matter of fact, at that time I didn't know whether the bank owned it or somebody else."

[4, 5] The fact that a cashier of a bank sells cotton is not of itself sufficient to charge the bank with holding itself out through the cashier as being either the owner of the cotton or as having the lawful right and authority to sell same, and no presumption arises in favor of the purchaser because he is charged by law with notice that there is a prohibition against a bank dealing in cotton. To analyze the evidence it clearly shows that "as a matter of fact at the time" appellants purchased the cotton from H. D. Ayers they did not "know whether the bank owned it or somebody else," and they did not care, because they "never inquired who owned it," but were willing to accept it from any person whom Ayers might represent, or from him. They were told a few days after the transaction closed that the cotton belonged to Summers and Day, whom they originally sued but voluntarily dismissed as to them. Summers testified to these facts. Day was dead when the suit was tried. Summers was solvent when the suit was filed, and no showing was made by appellants that Day was not so, and therefore no injury is shown to have resulted to appellants because the truth of the transactions was shown; and the evidence is undisputed that appellee bank received no benefits whatsoever from the transactions, and the doctrine of estoppel is not involved or raised under the undisputed evidence.

Since we take this view, the other questions raised become immaterial, and the judgment of the trial court will be affirmed.

Affirmed.