**FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, Plaintiff-Appellant,**

v.

**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant-Appellee.**

No. 15963.

United States Court of Appeals Seventh Circuit.

March 7, 1968.

John W. Duffy, Emmett D. McCarthy, Chicago, Ill., Frank Delany, Washington, D. C., Roy C. Palmer, Chicago, Ill., for appellant.

Don H. Reuben, John E. Angle, Frank Cicero, Jr., Chicago, Ill., for appellee.

Before CASTLE, KILEY and CUMMINGS, Circuit Judges.

CASTLE, Circuit Judge.

Federal Savings and Loan Insurance Corporation, plaintiff-appellant, brought suit in the District Court to recover $305,175.00, with interest thereon from July 19, 1963, to date of judgment, from the defendant-appellee, American National Bank and Trust Company of Chicago. The $305,175.00 principal sum sought to be recovered represents the amount paid by Beverly Savings and Loan Association on July 19, 1963, to the Bank[1] for a note of Howard B. Quinn and his wife. The note, then in default, was secured by a pledge of permanent reserve stock of Beverly owned by the Quinns. Howard B. Quinn was Chairman of the Board of Beverly, and his wife was a director of Beverly.

In the course of its liquidation due to insolvency, Beverly, in October 1963, assigned all of its assets, including causes of action, to Federal, which provided the funds for payment of Beverly's liabilities

---

1. For convenience and brevity the defendant-appellee, American National Bank and Trust Company of Chicago, will be referred to as the "Bank". Beverly Savings and Loan Association, a permanent reserve type association chartered under the laws of Illinois, will be referred to as "Beverly". The plaintiff-appellant, Federal Savings and Loan Insurance Corporation, a federal instrumentality, the insurer of the withdrawable accounts of Beverly, will be referred to as "Federal".

and creditors. Federal sues as assignee and creditor of Beverly, and as the insurer-subrogee to the claims of depositors of Beverly.

Federal's claim against the Bank is set forth in Count I of its complaint, as amended, which asserts in substance that the purchase-sale transaction between Beverly and the Bank was an illegal transaction in violation of both Illinois statutes and federal statutes and regulations. Count II of the complaint sought recovery from four of the directors of Beverly who allegedly voted approval of the purchase of the Quinns' note from the Bank.

The case was tried to the court, without a jury. After Federal completed its initial proof against all of the defendants the adequacy of that proof was tested by each defendant by motion. The motions of the director-defendants were denied.[2] The motion of the Bank for a directed verdict and final judgment was granted. The court made and entered findings of fact and conclusions of law on the basis of which it entered a judgment order in favor of the Bank. Federal appealed.

■ The District Court found that on July 17, 1963, the Quinns were indebted to the Bank in the sum of $300,000 secured by 304,049 permanent reserve shares of Beverly,[3] that the loan was in default, and the Bank had that day notified the Quinns that the collateral securing their indebtedness would be sold at 10:00 A.M. on July 19, 1963; that on July 18, 1963, the board of directors of Beverly, without prior communication with the Bank, voted to purchase the defaulted note and related collateral of the Quinns for the amount due on the note; that according to the board's resolution approving and ordering such purchase, Beverly was doing so to protect its then junior security interest in the collateral securing the note held by the Bank; that on July 18, 1963, the Bank was first advised of the resolution by counsel for Beverly; that on July 19, 1963, counsel for Beverly appeared at the Bank and acquired the note and related collateral for Beverly for the sum of $305,175.[4] The court concluded that considering the evidence in the light most favorable to the plaintiff, Federal had failed to sustain its burden of proving its case; that the sale by the Bank was made by it in good faith and was a lawful transaction by the Bank, which, at the time of the sale had no reason to believe that the transaction was not in all respects legal and proper; and that Federal is not entitled to rescind the transaction.

The record discloses that the existence of the "junior security interest" of Beverly referred to in the resolution mentioned in the court's findings is based on a demand note and accompanying assignment and pledge agreement executed by Quinn. The demand note was in the amount of $500,000, payable to Beverly's order. The accompanying agreement provided, in effect, that the demand note was secured by a secondary security interest in the permanent reserve shares theretofore pledged with the bank as collateral on the Quinn note to the Bank. The $500,000 demand note and accompanying agreement were executed by Quinn on July 18, 1963, the date of the adoption of the resolution providing for the purchase of the Quinn note from the Bank. The $500,000 demand note Quinn gave Beverly represented the balance of an indebtedness of Quinn to Beverly which arose from an unauthorized withdrawal of $553,167 from the funds of Beverly which Quinn caused to be made

---

2. With respect to the director-defendants the trial proceeded and resulted in the judgment against them which is the subject of the appeals and cross-appeal (Nos. 15964 to 15968, inclusive) considered in our opinion in Federal Savings and Loan Insurance Corporation v. Geisen et al., 392 F.2d 900.

3. These shares, owned by the Quinns, represented approximately two-thirds of the permanent reserve shares of Beverly.

4. The Bank endorsed the note payable to Beverly "without recourse".

on April 3, 1963, and had agreed to repay.

The main contested issues presented by Federal's appeal, as we conceive them, are (1) whether the District Court applied correct legal critera in concluding on the basis of the evidence adduced on Federal's case-in-chief that the sale by the Bank of the note and collateral of the Quinns to Beverly was a lawful transaction by the Bank; and (2) if good faith on the part of the bank in its participation in the transaction constitutes a factor which would serve to immunize the Bank from liability on what otherwise would be an unlawful transaction on its part, is the court's finding that the Bank acted in good faith and had no reason to believe that the sale by it was not in all respects a proper and legal transaction clearly erroneous on the basis of the evidence then before the court. An additional issue, presented by a contention the Bank makes in support of the judgment order, is whether Federal's action in recovering judgment against the Quinns on the $300,000 note here involved and obtaining a partial satisfaction ($11,538.98) thereon constitutes an election of remedies which precludes Federal from maintaining this suit against the Bank.

Section 5–11 of the Illinois Savings and Loan Act (Ill.Rev.Stat.1965, ch. 32, § 801) expressly prohibits the making of a loan by the savings and loan association:

"  *  *  * to a majority permanent reserve shareholder, officer, or director of an association issuing permanent reserve shares, * * * except upon real estate occupied by such shareholder, officer, or director as a homestead, or upon the security of withdrawable capital; * * *."

By Section 5–1 of the Act (Ill.Rev.Stat., ch. 32, § 791) purchases of loans are restricted to those which the association could directly make. And, Section 4–3 (ch. 32, § 763) provides, with an exception not here pertinent, that permanent reserve shares shall be "[n]onwithdrawable, * * * until all liabilities of the association have been satisfied in full, including payment of the withdrawable value of all other types or classes of capital".

The Bank, of course, is chargeable with knowledge of the statutory prohibition,[5] and the record discloses that the Bank was aware of the status of Quinn as an officer and director of Beverly at the time it originally made the loan to the Quinns on April 2, 1962. And Quinn continued to be chairman of the board and a director of Beverly at the time the Bank sold the loan to Beverly.

The loan made by the Bank to the Quinns was not a loan Beverly could have made to the Quinns—it was a loan expressly and clearly interdicted. It fell within neither of the two exceptions made to the statute's positive command that "[n]o loan shall be made to" an officer or director of the association. On the face of the statute such a loan is declared ineligible for purchase by the savings and loan association, and its sale to the association would be an illegal transaction.

The Bank contends, however, that the ban of the statute does not operate to invalidate an otherwise prohibited transaction where it constitutes a salvage operation designed to minimize or obviate loss—that a savings and loan association has the right to engage in an otherwise interdicted or illegal transaction where it is in an unfortunate loan position and does so to protect its security position or to realize on an otherwise doubtful debt. On this premise the Bank urges that its sale to Beverly is a valid sale, and not subject to rescission. The Bank contends that Beverly's representation, formalized in the resolution of the board of directors of Beverly authorizing and directing the purchase of the Quinn loan, that the purpose of such purchase was to protect Beverly's junior lien position in the collateral served to

5.  Knass v. Madison Kedzie State Bank, 354 Ill. 554, 188 N.E. 836.

establish a basis validating the Bank's participation in the transaction and immunizing it from liability thereon by way of rescission or otherwise. And that the Bank had no reason to believe at the time of the sale that the permanent reserve shares it held as collateral were not worth an amount in excess of the $305,175 paid by Beverly which would justify Beverly's acquisition of the loan and collateral to protect its secondary security position in connection with the $500,000 demand note it had received from Quinn. On the basis of this position, which also appears to be the basis for the District Court's judgment order, the Bank dismisses without import that it turned out that the value of the collateral was not such as justified its acquisition—that it proved to be worthless.

We have examined the case authority cited and relied upon by the Bank as articulating and applying the doctrine it espouses and characterizes as a "necessity" or "emergency purchase" doctrine grounded upon the realities of business life and which permits a financial institution to engage in an otherwise interdicted or illegal transaction if done to protect a security position. The Bank's reliance on First National Bank of Charlotte v. National Exchange Bank, 92 U.S. 122, 23 L.Ed. 679, in this connection is misplaced. In that case no expressly prohibited transaction was involved. The First National Bank in the compromise settlement of a disputed claim against it growing out of a legitimate banking transaction paid $40,000 in cash to the National Exchange Bank and received in return a portfolio of commercial stocks. Subsequently, the First National sought to rescind the transaction on the ground that its purchase of the stocks was unlawful and unauthorized. The Supreme Court affirmed the denial of such relief. In commenting on the implied incidental power of a national bank to make compromises "to avoid or reduce losses" the Court was careful to point out that "except to the extent that they are restrained by the charter or by-laws" such compromises are committed to the judgment and discretion of the board of directors and officers and agents of the bank. And the Court recognized that incidental implied power is subject to any express prohibition imposed by applicable statutes, observing that, "[t]o some extent it has been thought expedient in the National Banking Act to limit this [incidental implied] power". With respect to the acquisition of the stocks the Court said (92 U.S. 122 at 128, 23 L.Ed. 679):

"Dealing in stocks is not expressly prohibited; but such a prohibition is implied from the failure to grant the power. In the honest exercise of the power to compromise a doubtful debt owing to a bank, it can hardly be doubted that stocks may be accepted in payment and satisfaction, with a view to their subsequent sale or conversion into money so as to make good or reduce an anticipated loss. Such a transaction would not amount to a dealing in stocks. * * * Of course, all such transactions must be compromises in good faith, and not mere cloaks or devices to cover unauthorized practices."

Thus, the case stands for no more than that in the absence of an express prohibition forbidding the purchase or acquisition of commercial stocks the purchase of such stocks in the good faith exercise of an incidental implied power of the bank—the compromise of a claim, with a view to ultimate protection against an impending loss—was not an illegal transaction subject to rescission. It certainly is no authority for the proposition that an implied power can exist where a statute directly and clearly prohibits its exercise.

In Zantzingers v. Gunton, 19 Wall. 32, 86 U.S. 32, 22 L.Ed. 96, a transaction assailed as an unauthorized acquisition of real estate by the liquidating trustees of a bank was held not to be a purchase of real estate but merely the paying off of certain incumbrances on property on which the bank had a lien for a debt due it, so that when the property was sold and converted into money all of it

would be paid to the trustees. The transaction was held not forbidden by any law of the jurisdiction, statutory or otherwise. The decision is not authority for the proposition that the implied incidental power of a financial institution to protect its security position overrides an express prohibition clearly directed to a specific transaction.

Brown v. Hogg, 14 Ill. 219, involved only the permissible scope of an express authorization to a bank to acquire real estate in satisfaction of existing debts. There was no express prohibition interdicting the specific transaction there involved, and it was found to be clearly within the "reason and equity" of the authority expressly granted. Likewise, in Steiger v. Woods, 298 Ill.App. 48, 18 N.E.2d 241, the bank was specifically authorized by statute to hold real estate "to which it may obtain title in the collection of its debts" and the court, accordingly, approved a transaction in which real estate was acquired in settlement of a past due debt. In Kelso v. Oak Park Building and Loan Association, 99 Ill.App. 123, an extension of time effected by means of a new mortgage to an old borrower whose original mortgage was in default was held not to constitute a forbidden loan to a nonmember but action "within the powers plainly conferred upon the association by statute".

Fourth National Bank v. Stahlman, 132 Tenn. 367, 178 S.W. 942, L.R.A. 1916A, 568 involved no express prohibition forbidding the bank's acquisition of commercial stocks. Like *First National Bank of Charlotte*, supra, it recognizes the implied prohibition against "dealing in stocks" resulting from failure to grant such power, and in keeping with the rationale of *First National Bank of Charlotte* which it cites, holds that the express authority conferred on the bank to acquire and own real estate necessary to transact its business permitted the bank to acquire stock in a building corporation holding such real estate, and that such action did not constitute "dealing in stocks".

Among other cases cited by the Bank are Bailey v. Babcock, (W.D.Pa.) 241 F. 501; Haynes v. Kershaw, 5 Cir., 22 F.2d 735; Hodges v. Bank of Columbia, 130 S.C. 115, 125 S.E. 417, and W. J. Stevens Co. v. Novice State Bank, 294 S.W. 256 (Tex.Civ.App.), rev'd on other grounds, Tex.Com.App., 2 S.W.2d 419. Our study of these cases leads us to the conclusion that they, too, fail to support the existence of a doctrine such as the Bank seeks to have us apply. They involved no express prohibition of the specific transaction assailed and were concerned either with the interpretation or scope of a prohibition, the interpretation or scope of an authority specifically granted, or whether an authority might be implied as a necessary incident to authority granted in general terms. And, insofar as Webb v. Cash, 35 Wyo. 398, 250 P. 1, may be taken as supporting the position of the Bank we believe it departs from the rationale of *First National Bank of Charlotte*, supra, which it cites, and we decline to follow it.

The express and specific prohibition of the Illinois statute interdicting a loan to an officer or director of the association is wholly inconsistent with the existence of an implied power to engage in such a transaction for the purpose of protecting a security position. This being so, the Bank's sale of the Quinn note to Beverly is clearly and patently an illegal transaction. As such, it is subject to rescission on the grounds of public policy. Woodall v. Peden, 274 Ill. 301, 113 N.E. 608; People ex rel. Nelson v. Wiersema State Bank, 361 Ill. 75, 197 N. E. 537, 101 A.L.R. 501. And this is particularly so in view of the quasi-public character of savings and loan associations (People ex rel. Barrett v. Logan County Bldg. & Loan Ass'n, 369 Ill. 518, 17 N.E.2d 4) and the declared legislative solicitude for the safety of funds entrusted to such an institution by its depositors as evidenced by Section 1–2 of the Illinois Savings and Loan Act (Ill. Rev.Stat. ch. 32, § 702). Good faith on the part of the Bank is a wholly irrelevant consideration—and it constitutes no

defense. D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447, 458–460, 62 S.Ct. 676, 86 L.Ed. 956; Federal Deposit Insurance Corp. v. Vest, 6 Cir., 122 F.2d 765, 768–769. It is therefore unnecessary that we consider or determine the issue tendered with respect to whether the court's finding of good faith on the part of the Bank is clearly erroneous insofar as it rests upon factual determinations. And our conclusions on this phase of the case make it unnecessary to consider and appraise Federal's additional contentions that the transaction between the Bank and Beverly is illegal as also constituting a violation of federal statutes and regulations.[6]

■ We turn to consideration of the Bank's contention that the election and pursuit of an inconsistent remedy bars Federal from maintaining this action. In this connection the Bank urges that Federal's state court suit against the Quinns on the $300,000 note in which Federal obtained a judgment on which it received partial satisfaction ($11,538.98) constituted an affirmance of the sale of the note to Beverly, with full knowledge of the facts, which deprives Federal of standing to rescind. We perceive no merit in this contention. Section 5–12 of the Illinois Savings and Loan Act (Ill. Rev.Stat. ch. 32, § 802) provides:

"(a) Every loan or other investment made in violation of this Act shall be due and payable according to its terms, and the obligation thereof shall not be impaired. * * *"

Thus, regardless of the illegality of the transaction in which it was acquired, the note was enforceable against the Quinns. It would be incongruous with the statute to regard enforcement of the obligation by the association (or by Federal in the capacity in which it sues) as a waiver of illegality and affirmance of the transaction. That such enforcement was intended to bar pursuit of remedies based on the illegality of the transaction is negated by subsection (b) of the same section which makes a participating officer or director liable for all damage sustained in consequence of the violation.

An argument analogous to that advanced by the Bank—inconsistency of theory in remedies employed—was a subject of consideration by this Court in National Lock Co. v. Hogland, 7 Cir., 101 F.2d 576, 586–587. Apposite here is the observation we there made:

"But it [the alleged inconsistency of theory in the remedies employed] does not result in double recovery or a violation of the doctrine of 'election'. It has been said by the United States Supreme Court in Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075, that 'At best this doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended.' * * * [38 S.Ct. page 452].

The formal doctrine of election of remedies by judicial decision has been confined gradually to its true remedial purpose as a doctrine of substance; and as stated by an eminent authority on trusts and trustees, should be confined to cases 'where (1) double compensation of the plaintiff is threatened or (2) the defendant has actually been misled by the plaintiff's conduct or (3) res adjudicata can be applied.' Bogert, Trusts and Trustees, 1935 Vol. IV, § 946."

In this connection, see also People ex rel. Ames v. Marx, 370 Ill. 264, 18 N.E.2d 915. The Bank would be entitled to credit of $11,538.98 on a recovery against it. Federal seeks no double or multiple satisfaction on its claim.

For the reasons above set forth we are of the opinion that the District Court applied incorrect legal criteria in granting the Bank's motion for a directed verdict and entering judgment for the Bank.

6. In this connection Federal's complaint included assertions of the illegality of the transaction predicated upon its being in violation of 12 U.S.C.A. § 1425a, 12 CFR 523.12; 18 U.S.C.A. § 657 and 18 U.S. C.A. § 1006.

A motion filed herein by the Bank to strike certain portions of Federal's brief was taken with the case. The Bank asserts that the portions it seeks to have stricken are addressed to an issue not presented on the record or litigated below. Inasmuch as our disposition of the appeal is in no manner grounded on a resolution of that issue we decline to extend this opinion to encompass the discussion an expository ruling on the motion would necessarily entail. The basis of our opinion makes the matter of no import. We treat it as being moot.

The judgment order appealed from is reversed and the cause, insofar as Count I of the complaint is concerned, is remanded to the District Court for further proceedings consistent with the views expressed herein.

Reversed and remanded.

CUMMINGS, Circuit Judge, concurs in the result.