FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION,
Plaintiff-Appellee,

v.

Joseph GEISEN, Allan Douglass, Raleigh Steuber and Lewis Waxman,
Defendants-Appellants.*

FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, Plaintiff-Appellee and Cross-Appellant,

v.

Joseph GEISEN, Allan Douglass, Raleigh Steuber and Lewis Waxman, Defendants-Appellants and Cross-Appellees.

Nos. 15964–15968.

United States Court of Appeals
Seventh Circuit.

March 7, 1968.

* Joseph Geisen prosecutes Appeal No. 15967; Allan Douglass, Appeal No. 15964; Raleigh Steuber, Appeal No. 15965; and Lewis Waxman, Appeal No. 15966.

Robert E. Pfaff, Chicago, Ill., for defendant-appellant, Allan Douglass; Raymond, Mayer, Jenner & Block, Chicago, Ill., of counsel.

James G. Culbertson, Douglas M. Reimer, Chicago, Ill., for defendant-appellant, Joseph Geisen; John P. Graves, Jr., Roy C. Palmer, Jr., Chicago, Ill., Hinshaw, Culbertson, Moelmann & Hoban, Chicago, Ill., of counsel.

Prentice H. Marshall, Samuel E. Hirsch, Owen Rall, Samuel Shkolnik, Chicago, Ill., for appellants.

John M. Duffy, Emmett D. McCarthy, Chicago, Ill., Frank Delany, Washington, D. C., for appellee.

Before CASTLE, KILEY and CUMMINGS, Circuit Judges.

CASTLE, Circuit Judge.

Federal Savings and Loan Insurance Corporation brought suit in the District Court to recover $305,175, plus interest thereon from July 19, 1963, from Joseph Geisen, Allan Douglass, Raleigh Steuber and Lewis Waxman. The $305,175 principal sum sought to be recovered represents the amount paid by Beverly Savings and Loan Association[1] on July 19, 1963, to the American National Bank and Trust Company of Chicago for a note of Howard B. Quinn and his wife. The note, then in default, was secured by a pledge of permanent reserve stock of Beverly owned by the Quinns. Howard B. Quinn was Chairman of the Board of Beverly, and his wife was a director of Beverly. The defendant, Joseph Geisen, was a director of Beverly, and its president. Defendants Allan Douglass, Raleigh Steuber and Lewis Waxman were directors of Beverly.

In the course of its liquidation due to insolvency, Beverly, in October 1963, assigned all of its assets, including causes of action, to Federal, which provided the funds for payment of Beverly's liabilities and creditors. Federal sues as assignee and creditor of Beverly, and as the insurer-subrogee to the claims of depositors of Beverly.

Federal's claim against the defendant directors is set forth in Count II of its complaint, as amended, which asserts in

---

1. For convenience and brevity Beverly Savings and Loan Association, a permanent reserve type association chartered under the laws of Illinois, will be referred to as "Beverly". Federal Savings and Loan Insurance Corporation, a federal instrumentality, the insurer of the withdrawable accounts of Beverly, will be referred to as "Federal". American National Bank and Trust Company of Chicago will be referred to as the "Bank".

substance that the purchase of the Quinn note by Beverly was approved and directed in a resolution adopted by the affirmative votes of the defendants, and that the purchase was an illegal transaction in violation of both Illinois statutes and federal statutes and regulations. Count I of the complaint sought recovery against the Bank.

The case was tried to the court, without a jury.[2] The court made and entered findings of fact and conclusions of law on the basis of which entered it entered a judgment order that Federal recover from the defendant directors, jointly and severally, the sum of $293,636.02,[3] together with post-judgment interest and costs. Each of the defendant directors prosecuted a separate appeal. Federal cross-appealed from the judgment insofar as it failed to award Federal pre-judgment interest on the principal sum claimed. Although the appeals and cross-appeal were not formally consolidated they were argued together and we elect to consider them in one opinion.

The factual findings made by the District Court are detailed and exhaustive. On the basis of those findings the court concluded, *inter alia*, that the defendants by authorizing Beverly's purchase of the Quinns' note from the Bank knowingly participated in and assented to Beverly making a prohibited loan to a majority permanent reserve shareholder, officer and director, and an unauthorized investment, contrary to the provisions of Ill.Rev.Stat.1963, ch. 32, § 801 and § 791(d); knowingly violated the liquidity regulation of the Federal Home Loan Bank Board, and knowingly misapplied and made an unauthorized expenditure of Beverly's funds;[4] and by reason thereof are individually and jointly liable for all damage which Beverly and its members sustained in consequence of such violation.

Main contested issues presented by the defendants' appeals, the resolution of which will be dispositive thereof, are (1) whether the record supports the finding and conclusion of the District Court that the defendants, and each of them, knowingly violated the Illinois statute; (2) whether, in view of the purpose of the purchase of the Quinns' loan by Beverly, such action taken in good faith and upon advice of counsel would remove the transaction from the ban of the statute and thus immunize the defendants from liability thereon; (3) if so, is the court's finding and conclusion that none of the defendants acted in good faith clearly erroneous; and (4) whether the court applied correct legal criteria in concluding that Federal occupied the status of, and possessed a right to recover as, an assignee, insurer or creditor.

The record discloses, and the District Court found, that on July 17, 1963, the Quinns were indebted to the Bank on a note in the principal sum of $300,000, dated April 2, 1963, bearing interest at the rate of 5¾ per cent per annum, and secured by a pledge of 304,049 permanent reserve shares of Beverly owned by the Quinns and representing approxi-

---

2. After Federal completed its initial proof against all of the defendants the adequacy of that proof was tested by each defendant by motion. The motions of the director-defendants were denied. The motion of the Bank for a directed verdict was granted, and judgment entered in its favor. That judgment is the subject of the appeal considered in our opinion in Federal Savings and Loan Insurance Corporation v. American National Bank and Trust Company of Chicago, 7 Cir., 392 F.2d 906. The trial proceeded as to the director defendants and culminated in the judgment order which is the subject of these appeals and cross-appeal.

3. This sum represents the $305,175 principal sum claimed in the complaint less $11,538.98 subsequently obtained by Federal on a judgment recovered against the Quinns in a state court suit on the note.

4. Amended Count II of the complaint, by adoption and incorporation of allegations contained in Count I, asserted the illegality of the purchase of the note by Beverly on the basis that the transaction involved a violation of 12 U.S.C.A. § 1425a, 12 CFR 523.12; 18 U.S.C.A. § 657; and 18 U.S.C.A. § 1006, as well as being in violation of the Illinois statutes.

mately two-thirds of the permanent reserve shares of Beverly; the loan was then in default, and the Bank had notified the Quinns the collateral would be sold at 10:00 A.M. on July 19, 1963. Quinn owed Beverly $500,000 by reason of an unauthorized withdrawal he had made from its funds in April 1963, and was unable to pay it. At the regular July meeting of the Board of Directors of Beverly, held July 18, 1963, at which the Quinns, the defendants, and counsel for Beverly were in attendance, said counsel reported to the directors that he had investigated Quinn's financial condition and had failed to discover any assets which might serve to secure Quinn's $500,000 indebtedness to Beverly other than Quinn's interest in a land trust which owned the building occupied by Beverly, and Quinn's permanent reserve shares which were already subject to the prior pledge in favor of the Bank. Counsel recommended that Quinn be required to execute his note to Beverly in the sum of $500,000, and that this note be secured by an assignment of Quinn's interest in the land trust and a secondary pledge of his 304,049 permanent reserve shares. The defendant directors then adopted a resolution that no present action be taken to collect the $500,000 owed by Quinn provided he execute a demand note to Beverly for that amount with such security. The directors and counsel then discussed the Bank's notice to Quinn that it was going to sell Quinn's collateral on July 19, 1963, and whether Beverly should protect its secondary interest in that collateral by purchasing the Quinn loan, with its collateral, from the bank. In response to questioning, counsel advised the directors that Beverly could not ordinarily purchase its own shares or the Quinns' note but that in his opinion Beverly would be justified in protecting its security position, provided that the note and shares were held for only a short time and the shares were reasonably worth $800,000. He indicated that if Beverly acquired the Quinns' note and shares from the Bank, they should be disposed of within approximately two weeks. Thereupon the defendant directors adopted a resolution, each of the defendants voting affirmatively, authorizing and directing the purchase and acquisition of the Quinns' note and the permanent reserve shares securing the same, for cash in the face amount of the note, plus interest. The resolution recited that the action was authorized "for the sole purpose of protecting [Beverly's] security interest" in the 304,049 permanent reserve shares. Quinn then executed the $500,000 demand note and the assignment and pledge instruments called for under the earlier resolution. On July 19, 1963, pursuant to the second resolution, the purchase from the Bank was consummated, Beverly paying $305,175 to the Bank for the Quinns' note and surrender of the collateral. The permanent reserve shares proved to be worthless but subsequently $11,538.98 was realized in partial satisfaction of a state court judgment Federal obtained against the Quinns on the $300,000 note.

The court made a number of additional findings, supported by substantial evidence, to the effect that beginning at least as early as March 1963 Beverly was in failing circumstances, and on the basis of a projected dividend deficiency coupled with an existing liquidity ratio which, under a Federal Home Loan Bank Board regulation, prohibited it from engaging in further lending activity, was insolvent.

The court further found that on July 18, 1963, the date the defendants authorized and directed the purchase of the Quinns' loan, none of the defendants had any reasonable basis for a good faith belief that the permanent reserve shares held by the Bank as collateral were worth $800,000 or could be sold by Beverly within two weeks from their acquisition; and each of the defendants knew or had means of knowing, and was deliberately indifferent to facts which indicated the impaired condition of Beverly's capital and the inherent worthlessness of the permanent reserve shares.

**904**

Section 5–11 of the Illinois Savings and Loan Act (Ill.Rev.Stat.1963, ch. 32, § 801) expressly prohibits the making of a loan by the savings and loan association:

"* * * to a majority permanent reserve shareholder, officer, or director of an association issuing permanent reserve shares, * * * except upon real estate occupied by such shareholder, officer, or director as a homestead, or upon the security of withdrawable capital; * * *"

By Section 5–1 of the Act (Ill.Rev.Stat., ch. 32, § 791) purchases of loans are restricted to those which the association could directly make. And, Section 4–3 (ch. 32, § 763) provides, with an exception not here pertinent, that permanent reserve shares shall be "[n]onwithdrawable, * * * until all liabilities of the association have been satisfied in full, including payment of the withdrawable value of all other types or classes of capital". Section 5–12 of the Act (ch. 32, § 802) provides:

"(a) Every loan or other investment made in violation of this Act shall be due and payable according to its terms, and the obligation thereof shall not be impaired.

(b) Every director or officer of an association who knowingly shall violate, participate in, or assent to, or who knowingly shall permit any of the officers or agents of the association to make investments not authorized by this Act, shall be liable individually for all damage which the association or its members sustain in consequence of such violation."

■ The defendants, of course, are chargeable with knowledge of the statutory prohibition (Knass v. Madison and Kedzie State Bank, 354 Ill. 554, 188 N.E. 836) and they were aware of Quinn's status as a majority permanent reserve shareholder, officer, and director of Beverly. In the face of this knowledge they deliberately authorized and directed the purchase of the Quinns' loan from the Bank. This action was intentional.

It was, therefore, a "knowing" violation of the statute. Yates v. Jones National Bank, 206 U.S. 158, 180, 27 S.Ct. 638, 51 L.Ed. 1002; Thomas v. Taylor, 224 U.S. 73, 82, 32 S.Ct. 403, 56 L.Ed. 673. Neither bad motive nor desire for personal gain is required to establish a knowing violation of a statute such as that here involved. Corsicana National Bank v. Johnson, 251 U.S. 68, 71 and 83, 40 S.Ct. 82, 64 L.Ed. 141. The evidence and the applicable law combine to fully support the District Court's finding and conclusion that each of the defendants knowingly violated the statute.

Any impact the declared purpose of the purchase of the loan, "for the sole purpose of protecting [Beverly's] security interest in said 304,049 permanent reserve shares" pledged with the Bank as collateral, may be urged to have on the issue of "knowing violation", or as an element removing the transaction, if made in good faith, from the express interdiction of the statute, has been fully canvassed and rejected in our opinion in the companion appeal in Federal Savings and Loan Insurance Corporation v. American National Bank and Trust Company of Chicago, 7 Cir., 392 F.2d 906. And, for the purposes of this opinion we adopt the views expressed therein.

■ The loan which the defendants caused Beverly to purchase from the Bank was a loan clearly and expressly interdicted by the statute. For that reason reliance upon advice of counsel would not constitute a defense to the liability imposed. New Haven Trust Co. v. Doherty, 75 Conn. 555, 54 A. 209, 212. Although reliance upon advice of counsel is an evidentiary factor which may be shown as tending to establish the existence of good faith (Uffelman v. Boillin, 19 Tenn.App. 1, 82 S.W.2d 545, 568) it is only in the absence of an express prohibition that good faith may become a relevant factor in the type of transaction here involved. The absence of a clear and explicit prohibition distinguishes the cases such as Bailey v. Babcock (W.D.Pa.), 241 F. 501, and Hodges v. Bank of Columbia, 130 S.C. 115, 125 S.E.

417, cited and relied on by the defendants.

■ In view of the conclusions we have reached on those aspects of the appeals we have considered above it becomes unnecessary that we extend this opinion to encompass a detailed exposition of the evidentiary factors which serve to support the several subsidiary findings on which the court based its ultimate conclusory finding that none of the defendants acted in good faith in the purchase of the Quinn loan. Suffice it to observe that from our examination of the record we are convinced that the ultimate finding is not clearly erroneous.

Likewise, our conclusions on this phase of the defendants' appeals make it unnecessary to consider and appraise the correctness of the court's conclusion that the defendants also violated the federal statutes and regulation to which reference has been made, or to determine whether liability may rest on such violation.

■ We turn to consideration of the issue concerning Federal's status to maintain this suit. It is contended that Federal failed to prove any right in it to recover on the claim it asserted. We perceive no merit in this contention. 12 U.S.C.A. § 1729(d) provides:

> "In connection with the liquidation of insured institutions in default, the [Federal Savings and Loan Insurance] Corporation shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the court or other public authority having jurisdiction over the matter."

The record discloses that the withdrawable capital accounts of Beverly were insured by Federal. After the Director of Financial Institutions of the State of Illinois took custody of Beverly on October 1, 1963, the members of Beverly adopted a plan of voluntary liquidation under which two liquidators, one representing Federal and one representing the State Department of Financial Institutions, were elected. The plan of voluntary liquidation embodied a "take-over" agreement which was executed by the liquidators and Federal on October 25, 1963, under which plan, Federal, to effect the discharge of its obligation as an insurer, furnished the funds to pay the withdrawal value of all withdrawable accounts, and all the valid credit obligations of Beverly, and in exchange received an assignment of all assets of Beverly, including causes of action. Defendants appear to take the position that the mechanics employed in effecting the arrangement somehow deprived Federal of its status of insurer-subrogee and assignee of Beverly. We do not agree. On the facts here involved Federal's status as an assignee, and as a subrogated insurer, and its concomitant right to assert and maintain the claim against the defendant directors, is patent.

■ The issue precipitated by Federal's cross-appeal is whether the court erred in refusing to allow pre-judgment interest. The complaint included a demand for interest from July 19, 1963, and Federal contends it is entitled to such interest at the 5¾ per cent per annum rate specified in the Quinn note. In its judgment order the court did not award such pre-judgment interest. Its failure to do so was error. The cases relied upon by the defendants as supporting the denial of pre-judgment interest recognize that such interest is recoverable if it arises from contractual agreement or is authorized by statute.[5]

---

5. Lakefront Realty Corp. v. Lorenz, 19 Ill. 2d 415, 423, 167 N.E.2d 236, 88 A.L.R.2d 816; Blakeslee's Storage Warehouses, Inc. v. City of Chicago, 369 Ill. 480, 483, 17 N.E.2d 1, 120 A.L.R. 715; Sammis v. Clark, 13 Ill. 544, 546; County of Madison v. Bartlett, (Ill.) 1 Scam. 67, 69; See also Pinkstaff v. Pennsylvania R.R. Co., 31 Ill.2d 518, 202 N.E.2d 512.

We are of the view that the right to the interest here claimed meets both of these conditions.

Section 802(a) clearly provides that the obligation of the prohibited loan remains unimpaired, and that the loan shall be due and payable "according to its terms". Here, one of those terms was the payment of interest on the principal sum at the rate of 5¾ per cent per annum. And the remedial purpose of § 802(b) operates to impose a quasi-contractual liability, analogous to the liability of a surety, upon the directors. Precision Extrusions, Inc. v. Stewart, 36 Ill.App.2d 30, 44–45, 183 N.E.2d 547. The obligation imposed on the directors by such a statute "is similar, in many respects, to that of sureties". Woolverton v. Taylor, 132 Ill. 197, 208, 23 N.E. 1007, 1009; Aiken v. Insull, 7 Cir., 122 F.2d 746, 754. Thus, the defendant directors' liability for "all damage" sustained in consequence of the violation partakes of the nature of a suretyship on the forbidden loan contract. Consequently, their obligation to respond in "damage" for interest as well as for principal rests on a quasi-contractual basis—albeit cast in the nature of an involuntary suretyship contract implied from the provisions of the statute.

In addition, Section 802(b) makes the defendant directors "liable * * * for all damage" sustained in consequence of the violation. "[A]ll damage" in the context in which such phrase is here employed—referring to damage occasioned by an unauthorized loan or investment—necessarily embraces loss of interest as well as loss of principal. The two are so related that intent to include the one but exclude the other cannot be presumed. To do so would be inharmonious with the purpose of the statute. That the section makes no express mention of "interest" or of "principal" is no basis for excluding either as a proper element of the "damage" for which the directors are made liable. The language of § 802(b), "all damage" is broad in scope. Thus, evaluated in the light of its subject matter and its purpose, the statute itself authorizes the inclusion of interest as an element of the damage.

The judgment order from which defendants' appeals, and the cross-appeal, are taken is affirmed except insofar as it fails to award pre-judgment interest to Federal Savings and Loan Insurance Corporation. The cause, as to Count II, is remanded to the District Court with direction to modify the judgment order appealed from so as to include the allowance of pre-judgment interest from July 19, 1963, at the rate of 5¾ per cent per annum on the principal sum of $305,175 (before applying the $11,538.98 credit) in the computation of the amount for which judgment is awarded to Federal Savings and Loan Insurance Corporation.

Costs on appeal in both the appeals and the cross-appeal are allowed to Federal Savings and Loan Insurance Corporation.

Affirmed as to appeals Nos. 15964 to 15967, inclusive;

Remanded on cross-appeal No. 15968 with directions.

CUMMINGS, Circuit Judge, concurs in the result.

