FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Plaintiff-Appellant, v. ROYAL FAUBION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 84—774

Opinion filed February 28, 1985.

David I. Herbst, of Portes, Sharp, Herbst & Kravets, Ltd., of Chicago, for appellant.

Donald L. Johnson, Marty J. Schwartz, and Kurt D. Baer, all of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

In this action the plaintiff, First Federal Savings & Loan Association of Chicago (First Federal) lent the defendants, Royal Faubion and Borg-Warner Equities Corporation, on two separate occasions in 1980, a total of $480,000. Both loans were secured by real estate located in a subdivision known as Richton Crossing in Cook County. On June 24, 1983, First Federal filed a complaint for foreclosure and sale as a result of the defendants' default on their loans. Over $465,000 of the original $480,000 loaned was still due. The defendants filed affirmative defenses of equitable estoppel and unclean hands, alleging that First Federal's instant foreclosure action was part of a scheme to monopolize the real estate development market in the western suburbs of Cook County in violation of the Federal antitrust statutes. First Federal filed a motion to strike the affirmative defenses, but the

trial court on March 2, 1984, denied the motion and entered an order finding that "there [was] a substantial ground for difference of opinion as to whether alleged violations of the Federal antitrust laws may properly be raised as affirmative defenses to an Illinois mortgage foreclosure action [and that] an immediate appeal [would] materially advance the ultimate termination of the litigation." Accordingly, pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308), we allow this interlocutory appeal from the trial court's denial of First Federal's motion to strike the defendants' affirmative defenses.

First Federal asserts that the alleged Federal antitrust violations are so remote from the mortgages sought to be foreclosed that there is no question but that the substantive law discussed below precludes the defendants from successfully raising their affirmative defenses. First Federal maintains that the court's focus should be on the validity of the underlying obligation, i.e., the two mortgages for $480,000, and that, absent a showing that these contracts were anything but intelligible economic transactions between two commercial parties, it cannot be concluded that such transactions were improper.

In response, the defendants contend that it is the filing of the foreclosure action that is the wrongful conduct which violates antitrust law and that the foreclosure action is an integral part of a monopolistic scheme. More specifically, the defendants allege that First Federal charged exorbitant interest rates on real estate ventures entered into by the defendants and others and that as a result, these ventures sustained heavy losses and incurred substantial debt. The defendants allege that it was then possible for First Federal to use this debt as leverage to file the instant foreclosure action and to further its monopolistic scheme. Thus, the defendants assert that these antitrust violations are the basis for raising the affirmative defenses of equitable estoppel and unclean hands.

The law is well settled that an action to foreclose a real estate mortgage is a proceeding in equity and as such, traditional equitable defenses may be raised by a mortgagor. (*Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1.) With regard to the instant certified question, a general answer was apparently provided in *Vendo Co. v. Stoner* (1969), 105 Ill. App. 2d 261, 245 N.E.2d 263, wherein the court held that Illinois courts have jurisdiction to hear and adjudicate a Federal antitrust defense to a contract action. However, in interpreting *Corn Products Refining Co. v. Oriental Candy Co.* (1912), 168 Ill. App. 585, an early case addressing the same subject, the *Vendo* court elaborated on its holding by stating that:

"[W]here the contractual provision sued upon is itself a violation of the federal statutes, the Illinois courts will entertain such a defense, but that the antitrust defense does not afford a defense where it is collateral to the provision sued upon." *Vendo Co. v. Stoner* (1969), 105 Ill. App. 2d 261, 296, 245 N.E.2d 263.

The use of defenses based on antitrust claims has been further discussed by a series of Federal cases. (See *Kelly v. Kosuga* (1959), 358 U.S. 516, 3 L. Ed. 2d 475, 79 S. Ct. 429; *Bruce's Juices, Inc. v. American Can Co.* (1947), 330 U.S. 743, 91 L. Ed. 1219, 67 S. Ct. 1015; *National Souvenir Center, Inc. v. Historic Figures, Inc.* (D.C. Cir. 1984), 728 F.2d 503, *cert. denied* (1984), 469 U.S. 825, 83 L. Ed. 2d 48, 105 S. Ct. 103.) In these actions, it was noted that "[a]s a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court." (*Kelly v. Kosuga* (1959), 358 U.S. 516, 518, 3 L. Ed. 2d 475, 477, 79 S. Ct. 429, 431.) Furthermore, in quoting Mr. Justice Holmes, the court stated that the courts are to be guided by the overriding general policy of "preventing people from getting other people's property for nothing when they purport to be buying it." *Kelly v. Kosuga* (1959), 358 U.S. 516, 520-21, 3 L. Ed. 2d 475, 479, 79 S. Ct. 429, 432.

Based on *Vendo*, a party may assert affirmative defenses based on Federal antitrust violations in a mortgage foreclosure action, but may not do so if the mortgage being foreclosed is collateral to the alleged antitrust violation. We believe the instant foreclosure action is collateral. We find no indication in the record that the underlying transactions were not intelligible economic transactions entered into by commercial parties. The defendants received $480,000 in cash from the plaintiffs and paid back only $15,000 of that amount. There is no relationship between these defaulted mortgages and the alleged fact the First Federal was attempting to control the real estate development market. Moreover, the facts in this case appear to present the precise situation the courts were speaking of when they set the policy of trying to prevent people from getting other people's property (or money) for nothing when they purport to be buying (or borrowing) it. If the defendants have valid antitrust claims, they are not precluded by this decision from pursuing such causes of action in another proceeding, but this court cannot countenance the use of the instant antitrust claims as a means to avoid paying valid debts.

Based on the foregoing, we find that the basis for the defendants' affirmative defenses of equitable estoppel and unclean hands does not exist, and therefore we reverse the trial court's order denying First

Federal's motion to strike the defendants' affirmative defenses and remand this cause with instructions to grant the above motion.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.