GUARANTY FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff-Appellee, v. AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants-Appellants.

First District (1st Division)   No. 86—1859

Opinion filed June 8, 1987.

Gould & Ratner, of Chicago (Louis R. Hegeman and Robert A. Carson, of counsel), for appellants.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Eric A. Oesterle, Richard L. Fenton, and Steven M. Levy, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Guaranty Federal Savings & Loan Association (Guaranty), brought this action in the circuit court of Cook County to foreclose the mortgage on certain property located at 2701 North Lehmann Court in Chicago, Illinois. The defendants, American National Bank & Trust Company (American National), which held legal title to the property under the terms of a land trust agreement, and the beneficiaries under the trust agreement, Robert Najman and Marvin Lustbader (defendants), denied the existence of any mortgage and raised several affirmative defenses and counterclaims.

The plaintiff moved for summary judgment on the defendants' affirmative defenses and counterclaims, and the defendants moved to strike the affidavit of Jerome A. Maher which the plaintiff filed in support of its motion for summary judgment. The trial court granted the plaintiff's motion for summary judgment, refused to strike the Maher affidavit, and entered a judgment of foreclosure and sale. Subsequently, the trial court approved the sheriff's report of sale and distribution. The defendants now bring this appeal.

The issue presented by the appeal is whether the defendants' affirmative defenses and counterclaims presented any genuine issues of material fact. For the reasons that follow, we find that they did not and, accordingly, affirm the circuit court's order granting summary judgment for the plaintiff on the affirmative defenses and counterclaims and affirm the judgment of foreclosure and sale entered by the trial court.

In reviewing an order entering summary judgment, this court's duty is to determine whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); see *Rivera v. Mahogony Corp.* (1986), 145 Ill. App. 3d 213, 494 N.E.2d 660.) The verified pleadings, depositions, affidavits and exhibits in the record before this court show that Lustbader and Najman conceived a plan to purchase and develop the Lehmann Court property by erecting and selling townhouses. The defendants planned to develop the property as a joint venture where they would provide the design concept and the developing and marketing expertise, while a "money partner" would provide all necessary funding for the project.

The defendants approached the plaintiff herein, Guaranty, in 1979 with their plan, and Guaranty agreed to participate in the project. However, Guaranty could not lend any more funds at that time to its

investment/development subsidiary, the Venture Service Corporation (Venture), through which Guaranty participated in joint ventures, without violating section 5—16 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1979, ch. 32, par. 806, now Ill. Rev. Stat. 1985, ch. 17, par. 3305—16).[1] Section 5—16 of the Act imposed limitations on the amount lent to a single borrower by a savings and loan association, and Guaranty was above their permitted limit of loans to Venture at that time. Therefore, according to the defendants, it was arranged that the joint venture would be initially documented as a loan to Lustbader and Najman and secured with a standard mortgage and note. The defendants further alleged that certain officers of Guaranty told Lustbader and Najman that they would not be personally liable on the loan. Additionally, Lustbader and Najman claimed they were told the documentation would be changed to reflect a joint venture once Venture had liquidated other real estate projects which would permit Guaranty to lend money to Venture for use towards the Lehmann Court project without violating section 5—16.

Thereafter, Lustbader and Najman entered into an agreement with the owner of the Lehmann Court property to purchase the property for $555,000. The purchase price was to be paid in five installments. Later, Lustbader and Najman obtained a $3 million construction loan commitment from American National. As a precondition to obtaining the construction loan, however, Lustbader and Najman were required to secure a letter of credit to guarantee payment of the unpaid installments that remained at that time on the purchase price of the property.

In December of 1980, Guaranty issued its final commitment letter to Lustbader and Najman for the Lehmann Court project. The commitment provided for a $759,150 mortgage at 1.5% over the prime interest rate. This loan was to be funded in three phases, and each phase was to be secured by a separate note and mortgage, which would in turn be taken out by the succeeding loan. Additionally, an interest reserve was to be established from which interest payments on the loan were to be made. Guaranty funded the first phase, which was secured by a $365,000 note and mortgage. Guaranty also funded the second phase, which was secured by a $652,500 note and mortgage. However, due to rising interest rates and the fact that the interest reserve had

[1]Subsequent to the commencement of this litigation, the Illinois Savings and Loan Act was repealed in Public Act 84—543 (1985 Ill. Laws 3327) effective September 17, 1985. It was replaced with the Illinois Savings and Loan Act of 1985 (Ill. Rev. Stat. 1985, ch. 17, par. 3301—1 et seq.). Therefore, throughout this opinion, the code sections in force at the relevant times for purposes of this appeal are followed by the corresponding new code sections.

been exhausted, Guaranty demanded the defendants pay the excess interest beginning March 3, 1982, and when the defendants failed to do so, the loan fell into default. The plaintiff then filed this action to foreclose on the second phase mortgage and note. Furthermore, because Guaranty did not fund the third phase of the loan, the construction lender paid the final installment of the purchase price by drawing on the defendants' letter of credit.

As an affirmative defense to the plaintiff's foreclosure suit, the defendants pleaded that the alleged joint-venture agreement which they claimed that Guaranty had entered into with them was for the purpose of developing the Lehmann Court property. The defendants asserted that under the terms of the agreement, Guaranty had agreed to provide the financial backing for the project, and Lustbader and Najman were only to contribute their expertise as developers and were not to be subject to any financial risk. They also alleged in their defense, as noted previously, that Guaranty documented this joint venture as a mortgage and note merely to avoid violating any State or Federal regulations and that it was not intended to be a loan, and, accordingly, they were not liable for any payment on the mortgage and note. In addition, the defendants raised a second defense asserting that Guaranty was not, under any circumstances, entitled to foreclose on the mortgage, even if the joint-venture agreement was illegal and unenforceable, because Guaranty had violated the "clean hands" doctrine by participating in the alleged illegal transactions.

The defendants also filed a number of counterclaims against Guaranty. One counterclaim was grounded in *quantum meruit* and sought to recover for time, effort, and money that they expended on the Lehmann Court project in furtherance of the joint venture. A second counterclaim sought the return of the amount drawn on their letter of credit by American National to make the final installment payment for the property, which they likewise contended had been expended in furtherance of the joint venture.

The plaintiff moved for summary judgment on the defendants' affirmative defenses and counterclaims, and in support of its motion, the plaintiff filed the affidavit of Jerome A. Maher and attached several exhibits. Maher is the secretary of Horizon Federal Savings Bank, which is the successor in interest to the plaintiff, Guaranty Federal Savings & Loan Association.[2] The exhibits and Maher's affi-

---

[2] For whatever reason, the present case has continued to be maintained under the name Guaranty Federal Savings & Loan Association and not that of the successor in interest, Horizon Savings and Loan Bank.

davit indicated that the Illinois Office of the Savings and Loan Commissioner had informed Guaranty's board of directors in June of 1980 that Guaranty's investments in its service corporation, Venture, violated section 5—16 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1979, ch. 32, par. 806, now Ill. Rev. Stat. 1985, ch. 17, par. 3305—16), as of February 20, 1980. The exhibits and affidavit further indicated that on July 23, 1981, the Commissioner ordered Guaranty to cease and desist from making investments in Venture, and in March of 1982 Guaranty entered into a compliance consent with the Commissioner whereby Guaranty agreed not to invest any further into Venture. Finally, the affidavit indicated that thereafter Guaranty's financial condition deteriorated to such an extent that the Federal Home Loan Bank Board found that Guaranty was insolvent or would become insolvent in the near future absent any action by the Board in September of 1982, and consequently, ordered a conditionally approved supervising merger of Guaranty and two other savings and loans with Horizon Federal Savings & Loan, which then occurred in November of 1982.

Subsequently, as has been earlier noted, the trial judge granted the plaintiff's motion for summary judgment concerning the defendants' affirmative defenses and their counterclaims. Further, although the defendants had moved to strike Maher's affidavit, the trial judge apparently did not expressly rule on the defendants' motion at the time he granted the motion for summary judgment. However, the trial court later stated during the hearing on the defendants' motion to reconsider that his order granting the plaintiff's motion for summary judgment necessarily included a denial of the defendants' motion to strike Maher's affidavit. On the basis of the granting of the plaintiff's motion for summary judgment and the denial of the defendants' motion for reconsideration, the trial court then entered a judgment of foreclosure and sale without a right of redemption.

Initially, the defendants assert in this appeal that there is overwhelming evidence that their arrangement with Guaranty was to be a joint venture and not a mortgage. They contend that even the trial judge agreed that there was evidence that the transaction was to be structured as a joint venture. Furthermore, the defendants argue that Guaranty's officers had repeatedly reassured them that the mortgage and note would not be enforced, and, thus, they conclude that the trial court should not have entered summary judgment. They submit that under these circumstances, questions of fact existed concerning the establishment of the joint venture for the development of the Lehmann Court project, and their right to enforce it against Guaranty or, at least, their right to estop Guaranty from enforcing the alleged mort-

gage and note against them based on the joint-venture agreement. In support of their position, the defendants cite *Bank Computer Network Corp. v. Continental Illinois National Bank* (1982), 110 Ill. App. 3d 492, 442 N.E.2d 586, where a bank was estopped from foreclosing on a borrower's note because of a bank officer's oral agreement to forgo collection, which the defendants here claim is similar to the case at bar.

Additionally, the defendants assert that even if the joint-venture agreement was illegal, as Guaranty contends it was, that fact would not necessarily make the contract unenforceable *per se*. The plaintiff submits that the question of enforceability depends upon examination of the statute allegedly violated and the intent of the legislature. Here, the defendants claim that a proper interpretation of section 5—12 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1979, ch. 32, par. 802, now Ill. Rev. Stat. 1985, ch. 17, par. 3305—12), which Guaranty claims they violated, actually supports their contention that the enforcement of the joint-venture agreement is enforceable. (See *FSLIC v. American National Bank & Trust Co.* (7th Cir. 1968), 392 F.2d 906; *FSLIC v. Geisen* (7th Cir. 1968), 392 F.2d 900.) This is so, the defendants argue, because the joint-venture agreement could have been performed legally if the plaintiff had obtained the Commissioner's approval before engaging in the joint venture; thus, the agreement is only technically illegal and therefore should not be held void and unenforceable. Accordingly, the defendants urge that this court reverse the trial court's order entering summary judgment for the plaintiff and remand the case for a factual hearing.

Guaranty, on the other hand, contends that even if a joint-venture agreement existed, it would be illegal as a matter of law and that these defendants knew or should have known of the illegality of such agreement and, thus, cannot now enforce it under any circumstances or use it as a defense. Furthermore, Guaranty asserts that the courts have repeatedly held that borrowers who have entered into such loan agreements are estopped from alleging that the lending institutions have promised not to enforce such loans. (See *Exchange National Bank v. Daniels* (7th Cir. 1985), 768 F.2d 140; *Central Republic Trust Co. v. Evans* (1941), 378 Ill. 58, 37 N.E.2d 745; *Mount Vernon Trust Co. v. Bergoff* (1936), 272 N.Y. 192, 5 N.E.2d 196.) Hence, Guaranty submits, the defendants are clearly estopped from asserting that the note and mortgage sued upon, which appear regular on their face, are not in fact obligations to make payments on a loan, but are instead a joint-venture agreement. Guaranty further contends that any claimed ignorance or lack of knowledge on the defendants' part concerning the illegality of the joint-venture agreement with the savings and loan association or of

any misrepresentations that might have been made to the regulatory authorities through the use of this loan procedure is irrelevant to its lack of enforceability. See *Exchange National Bank v. Daniels* (7th Cir. 1985), 768 F.2d 140; *Central Republic Trust Co. v. Evans* (1941), 378 Ill. 58, 37 N.E.2d 745; *Mount Vernon Trust Co. v. Bergoff* (1936), 272 N.Y. 192, 5 N.E.2d 196.

■■ The defendants' first argument here is that there was sufficient evidence in the record to justify a trial on the issue of whether there was in fact a joint-venture agreement with Guaranty and whether Guaranty had provided, as part of the agreement, not to enforce the purported loan the defendants had entered into with Guaranty. The defendants assert that a similar situation was presented in *Bank Computer Network Corp. v. Continental Illinois National Bank* (1982), 110 Ill. App. 3d 492, 442 N.E.2d 586, where the court held that summary judgment had been improperly granted by the trial court when the borrower presented evidence of an oral agreement with the bank to refrain from collecting on the borrower's note. The appellate court there held that the enforceability of the note could only be resolved at a full trial on their merits. However, we find that the issues in that case are clearly distinguishable from the present case. In *Bank Computer Network*, the bank had satisfied a certain past-due note of the borrower, which had been held by the bank for some time and had been periodically renegotiated, by making an offset deduction from the borrower's checking account. The borrower filed suit contending that the bank was currently in the process of discussing extending and increasing the note and had given assurances through one of its officers that it would not seek to collect on the note during these negotiations. The trial court granted summary judgment in favor of the defendant bank on the complaint and on the bank's counterclaim for the unpaid balance of the note. The appellate court reversed, finding that the plaintiff had introduced sufficient evidence of promissory estoppel to warrant a trial.

This is a far cry from our situation here. There was no dispute in the *Bank Computer Network* case concerning the fact that there was a loan arrangement between the bank and the borrower. The only question presented to the court was whether there was a factual question concerning the existence of an oral agreement to refrain from satisfying the borrower's note from his checking account while the parties were negotiating an extension of credit. This is clearly not the situation presented here, where the defendants claim that the lending institution is estopped from enforcing a written agreement in the form of a loan, which is regular on its face, because they claim that the agreement

between the parties is really a joint-venture agreement and that the lending institution's officers had agreed not to enforce the loan mortgage and note. This presents different factual and legal issues than those presented in the *Bank Computer Network* case. The question in the *Bank Computer Network* case was merely: Was the evidence sufficient to hold a hearing on whether there was an agreement to temporarily refrain from executing on the borrower's note? The question here, on the other hand, is whether the joint-venture agreement was illegal and, if so, whether the officers' alleged agreement not to enforce a loan could estop the savings and loan from enforcing the loan which appeared unconditional on its face.

We find that the situation here is similar to that presented in *Central Republic Trust Co. v. Evans* (1941), 378 Ill. 58, 37 N.E.2d 745. In that case, a promissory note made payable to a national bank, later assigned to the plaintiff trust company, was claimed by the borrower to actually be part of an illegal transaction involving a conspiracy of the payer and its officers to engage in illegal branch banking. The borrower claimed that note was not in reality a loan, but was merely an accommodation to assist the bank in carrying out its plan to engage in illegal branch banking. The borrower further asserted that the chairman of the board of directors of the bank had made specific oral representations before the note was signed that the borrowers would not be liable for the payment of the loan and that the note would be paid out of the proceeds of a later sale of the stock of the branch banking operation.

The Illinois Supreme Court in addressing this contention held that, even assuming the chairman had made representations to the borrowers, he had no authority to make such an agreement on behalf of the bank and such an agreement is inconsistent with the duties and responsibilities of banking institutions. The court stated:

> "The president of a bank has no authority to bind it except in the discharge of his ordinary duties, and it is not one of his ordinary duties, nor a power inherent in his office, to release debtors of the bank from the payment of their obligations without a consideration. This principle has been applied in holding that an executive officer of the bank has no implied authority to bind it by a promise that one who signs a note shall not be required to pay it. [Citations.] The principle is applicable to the chairman of the board of directors. ***
>
> [While] [t]he question does not seem to have been directly passed upon by this court, *** the transaction is so foreign to the ordinary business of a bank, and would vest in the executive

officers such power to deplete its assets that express authority to make such a contract would be invalid under *Knass v. Madison and Kedzie Bank*, 354 Ill. 554 [188 N.E.2d 836] ***. This plea did not, as a matter of law, state a defense to the note executed by the defendants." *Central Republic Trust Co. v. Evans* (1941), 378 Ill. 58, 66, 37 N.E.2d 745, 749.

Although the defendant borrowers in *Central Republic Trust Co.* further contended, as do the defendants here, that if the transaction itself which was in the form of a loan was illegal, then, since it was illegal, the bank also could not enforce the alleged loan against the borrower. The supreme court, however, rejected this contention and held that the bank could enforce the note even though the underlying agreement was illegal. The court observed that there was no suggestion, as there is none in the case here, that the bank, by any action of its directors or otherwise, had specifically authorized any illegal act or action or that the bank was without authority to make a loan to the defendants. Consequently, the supreme court stated since the loan itself was not illegal, it was properly enforceable and collectable.

The court in the *Central Republic Trust Co.* case specifically pointed out that in order to prevent recovery on the ground of illegality, the connection with the illegal transaction must be direct and not remote. And, in that case, as stated above, the court found that the bank's connection with the illegal transaction and the relationship of the loan itself to the illegal transaction was remote. In so finding, the court observed that the basis of the law preventing enforcement of illegal contracts is to protect legitimate interests of public policy, and thus the rule is not for the benefit of the parties to the contract, but rather for the benefit of the public. Accordingly, the supreme court in *Central Republic Trust Co.* found that the public policy there required that the depositors and the public at large should be protected, and this warranted that the unconditional loan should be enforced. We find here that the circumstances presented in our case are similar to those in the *Central Republic Trust Co.* case and, therefore, find the supreme court's reasoning is equally as compelling here, and accordingly we hold that the defendants' loan must be enforced pursuant to its terms.

■■ Furthermore, as Guaranty has contended, such a decision is not novel. The courts have consistently held that a borrower who enters into a loan agreement with a financial institution is estopped from asserting that the institution agreed not to enforce the loan. For example, in *Exchange National Bank v. Daniels* (7th Cir. 1985), 768 F.2d 140, the plaintiff bank filed suit against the defendants, who were makers and guarantors of a note for $4.5 million. The defendants there

asserted, *inter alia*, that they should not be held liable on the note since two officers of the bank had assured them that they would not be personally liable to the bank on the note. The Seventh Circuit affirmed a grant of summary judgment to the bank, holding that the note was unconditional on its face, did not set forth any circumstances under which the defendants could refuse to pay, and, accordingly, was enforceable on its terms. The court also observed that even if there were an express pledge by the bank officers not to collect the note, it would have been ineffective, citing the *Central Republic Trust Co.* case. Also, in *FDIC v. De Jesus Velez* (D.P.R. 1981), 514 F. Supp. 829, *aff'd* (1st Cir. 1982), 678 F.2d 371, the district court held that a defendant who gave a facially valid note to a bank was estopped from denying the validity of that note, even though there was a separate letter agreement providing that the bank would not seek enforcement of the loan until it had redeemed certain debentures that the defendant had pledged as collateral security. The court also noted, as is the case here, that this agreement was not approved or ratified by the board of directors of the bank, but merely by the bank's president and was kept by him personally.

In another similar case, the plaintiff bank in *Mount Vernon Trust Co. v. Bergoff* (1936), 272 N.Y. 192, 5 N.E.2d 196, sought to enforce a note executed and delivered by the defendant to the bank. In defense, the defendant relied upon a letter from the president of the bank, which stated in relevant part, "collection of said note is not to be enforced as against you, anything contained in said note to the contrary not withstanding." The New York Court of Appeals found that even though the defendant may not have known that the fictitious note would or was intended to deceive the public, she was chargeable with such knowledge and, thus, the agreement was void. The court there reviewed the public policy in relation to a bank (which is equally applicable to a savings and loan association) underlying that determination. The court stated:

> "The stability of banks is a matter of such public concern that the state or federal government regulates the affairs of each bank and periodically examines its apparent condition. The state cannot sanction any device intended to give a false appearance to a transaction or increase the apparent stability of a bank. The defendant may not have intended to deceive any person, but when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires

that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced. [Citations.]" (*Mount Vernon Trust Co. v. Bergoff* (1936), 272 N.Y. 192, 196, 5 N.E.2d 196, 197.)

See also *D'Oench, Duhme & Co. v. FDIC* (1942), 315 U.S. 447, 86 L. Ed. 956, 62 S. Ct. 676, *rehearing denied* (1942), 315 U.S. 830, 86 L. Ed. 1224, 62 S. Ct. 910.

■ Next, the defendants here attempt to argue that section 5—12 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1979, ch. 32, par. 802, now Ill. Rev. Stat. 1985, ch. 17, par. 3305—12) somehow mandates that the alleged joint-venture agreement should be enforced. Section 5—12 provides that "[e]very loan or other investment made in violation of this Act shall be due and payable according to its terms, and the obligations thereof shall not be impaired." (Ill. Rev. Stat. 1979, ch. 32, par. 802, now Ill. Rev. Stat. 1985, ch. 17, par. 3305—12.) The defendants assert that this language expresses a clear declaration of legislative intent that prevents Guaranty from evading its obligations, such as the alleged joint-venture agreement here, and, thus, mandates that the agreement should be enforced according to the terms of the joint venture. The defendants argue that where an illegal investment occurs, the remedy for a savings and loan is not to renege on its obligation, but rather to perform the agreement and proceed against the officers and directors that allowed the illegal transaction to occur. The defendants cite *FSLIC v. Geisen* (7th Cir. 1968), 392 F.2d 900, and *FSLIC v. American National Bank & Trust Co.* (7th Cir. 1968), 392 F.2d 906, which they allege support their interpretation of section 5—12. We find no merit in the defendants' argument.

The defendants' reliance on *American National Bank* and *Geisen* is misplaced. Contrary to the defendants' contentions, the court in *American National Bank* ruled that the agreement with the savings and loan, regardless of its illegality, could not be enforced against the savings and loan and held the underlying obligation of the note enforceable under section 5—12. The *Geisen* case, which was a companion case, merely held that the illegal agreement could be enforced against the officers and directors who were responsible for the illegal transaction.

Furthermore, it would be incongruous to hold that section 5—12 provides a shield to liability against a savings and loan. It is clear, we believe, that section 5—12 is intended to require that obligations due or owing to a savings and loan association may not be avoided by a bor-

rower based on a claim of illegality, and a borrower may not use it as a shield to avoid liability. The Act was intended to protect the public and depositors and not persons who make illegal transactions with savings and loan associations. If the Act were allowed to be used, as the defendants attempted here, to enforce illegal transactions against savings and loans, it would be directly contrary to the intent of the Act and detrimental to the public. See *Skokie Federal Savings & Loan Association v. Savings & Loan Board* (1967), 88 Ill. App. 2d 373, 232 N.E.2d 167.

● 4 The defendants also argue that Guaranty did not demonstrate that the alleged joint-venture agreement here was in fact illegal, because the defendants submit it was possible, if specifically approved by the savings and loan commissioner, for the agreement to be legal. Further, the defendants contend that the affidavit of Jerome Maher, offered in support of the illegality of the transaction, was wholly incompetent and should have been stricken. However, as Guaranty notes, the affidavit of Jerome Maher was introduced for the sole purpose of authenticating the documents attached to the affidavit as exhibits, the authenticity of which the defendants never questioned. In any event, contrary to the defendants' assertion, there was evidence here that the joint-venture agreement was illegal, and, in fact, it was accepted by all the parties from the very beginning of the negotiations that the savings and loan could not directly enter into such an arrangement. It is further irrelevant whether the defendants actually knew of the technical illegality of the transaction in now finding them estopped from raising this defense. (See *D'Oench, Duhme & Co. v. FDIC* (1942), 315 U.S. 447, 86 L. Ed. 956, 62 S. Ct. 676, *rehearing denied* (1942), 315 U.S. 830, 86 L. Ed. 1224, 62 S. Ct. 910; *Mount Vernon Trust Co. v. Bergoff* (1932), 272 N.Y. 192, 5 N.E.2d 196.) It is also difficult to believe that sophisticated real estate business people, such as the defendants, did not know of the impropriety of the savings and loan's actions. Furthermore, the defendants' contention that the transactions could have been legal, if approved, does not warrant any more consideration than to observe that the agreement was never approved, never offered for approval, and clearly, under the circumstances, would never have been approved.

■ The defendants next claim that, even if the trial court was correct in holding that the purported joint-venture agreement was illegal and unenforceable, it still improperly granted Guaranty summary judgment on defendants' unclean hands affirmative defense. However, the unclean hands doctrine does not apply to the savings and loan association here because Guaranty did not engage in any illegal activity at all; it was merely alleged that some of its officers and directors had agreed to enter the illegal joint venture with the defendants. Furthermore,

there was no formal action of the association or of its directors specifically authorizing or ratifying such activity; the actions here were solely the unilateral actions of the association's officers and/or directors. Hence, the record reflects that this action, *i.e.*, entering into a joint-venture agreement, was beyond the authority of the officers of the savings and loan association (Ill. Rev. Stat. 1979, ch. 32, par. 706, now Ill. Rev. Stat. 1985, ch. 17, par. 3301—6), without specific approval of the savings and loan (see Ill. Rev. Stat. 1979, ch. 32, par. 792.7, now Ill. Rev. Stat. 1985, ch. 17, par. 3305(g)), and, thus, was an illegal agreement between the officers and the borrowers. (See *Central Republic Trust Co. v. Evans* (1941), 378 Ill. 58, 66, 37 N.E.2d 745, 749; *cf. FSLIC v. Geisen* (7th Cir. 1968), 392 F.2d 900.) Also, based on the record here, the savings and loan, Guaranty, itself merely granted a loan to the defendants, which it was authorized to do, did not engage in any illegal or improper activity, and, accordingly, was not guilty of unclean hands and was entitled to enforce the loan. (See *First Federal Savings & Loan Association v. Faubion* (1985), 131 Ill. App. 3d 368, 370, 475 N.E.2d 989, 991; *Jaffe Commercial Finance Co. v. Harris* (1983), 119 Ill. App. 3d 136, 140-41, 456 N.E.2d 224; *Board of Education South Stickney School District No. 111 Cook County v. Murphy* (1978), 56 Ill. App. 3d 981, 985, 372 N.E.2d 899, 901-02.) It was only the officers and directors of Guaranty, as observed above, who may have been guilty of unclean hands, but such activity cannot be imputed to Guaranty under these circumstances. (See *Exchange National Bank v. Daniels* (7th Cir. 1985), 768 F.2d 140, 144 n.3; *Central Republic Trust Co. v. Evans* (1941), 378 Ill. 58, 66, 37 N.E.2d 745, 749.) Furthermore, to allow the application of the unclean hands doctrine to Guaranty here would be contrary to the intent of section 5—12 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1979, ch. 32, par. 802, now Ill. Rev. Stat. 1985, ch. 17, par. 3305—12) and would in this instance also be directly contrary to the public policy of protecting depositors and the public who deal with lending institutions. See *United States v. Mississippi Valley Generating Co.* (1960), 364 U.S. 520, 563, 5 L. Ed. 2d 268, 296, 81 S. Ct. 294, 316, *rehearing denied* (1961), 365 U.S. 855, 5 L. Ed. 2d 820, 81 S. Ct. 798; *Schnackenberg v. Towle* (1954), 4 Ill. 2d 561, 123 N.E.2d 817, *cert. denied* (1955), 349 U.S. 939, 99 L. Ed. 1267, 75 S. Ct. 785.

■ Finally, the defendants contend that the trial court erroneously granted Guaranty summary judgment on the defendants' counterclaim for *quantum meruit*. However, the defendants' argument is without any basis since the defendants' counterclaim for *quantum meruit* is grounded upon the alleged joint-venture agreement and their services in furtherance of the agreement. However, as we have stated, Guar-

anty was not a part of the joint venture, since it was illegal for it to enter into such an agreement, and the officers and directors were without authority to enter into a joint-venture agreement on behalf of Guaranty. Therefore, any services in furtherance of the joint-venture agreement did not confer any benefit upon Guaranty for which they would be obligated to compensate the defendants. (See *Exchange National Bank v. Daniels* (7th Cir. 1985), 768 F.2d 140; *FSLIC v. American National Bank & Trust Co.* (7th Cir. 1968), 392 F.2d 906.) Thus, the trial court also properly granted Guaranty's motion for summary judgment on the counterclaim.

Accordingly, for all these reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.